# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5078 | **DATE** | 10/17/2001 |
| **CASE TITLE** | Hinkle Engineering, Inc. vs. 175 Jackson L.L.C. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 2/28/2002 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motions (Docs 5-6, 6-1 & 7-1) motions to dismiss are granted in part and denied in part. Said motions to dismiss the prayer of punitive damages are granted. The remainder of the motions are denied. Defendants are given to October 31, 2001 to answer the complaint. All document discovery to be completed by December 31, 2001. All discovery to be completed by February 28, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 18 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 OCT 17 PM 1:34 | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HINKLE ENGINEERING, INC., )
)
        Plaintiff, )
)
vs. ) 01 C 5078
)
175 JACKSON LLC, INTELL MANAGEMENT )
AND INVESTMENT COMPANY, and WALSH )
CONSTRUCTION COMPANY OF ILLINOIS, )
)
        Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motions to dismiss of Defendants 175 Jackson L.L.C. ("Jackson"), Intell Management and Investment Company ("Intell"), and Walsh Construction Company of Illinois ("Walsh"). For the reasons set forth below, we deny the motions in part and grant them in part.

BACKGROUND

Plaintiff Hinkle Engineering, Inc. ("Hinkle"), an Oklahoma engineering firm, entered into a written lease with Chicago Exchange Building Associates ("CEBA"). The lease allowed Hinkle to occupy commercial office space at 175 West Jackson Boulevard in Chicago. Jackson succeeded CEBA as a party to the lease and assumed all of CEBA's rights and duties under the lease. The lease contained a provision stating

that the landlord had a contractual duty to ensure that Hinkle could have peaceful possession of the offices.

During Hinkle's occupation of the offices, Jackson hired Walsh to repair the building's roof. During this work, Walsh left holes in the roof that caused water to leak into Hinkle's office space, resulting in extensive damage. For about four months, Hinkle repeatedly notified Jackson, through Jackson's managing agent Intell, of the damage the leaky roof was causing, yet Jackson and Intell took no action to remedy the leak, nor did Walsh.

Hinkle filed a two-count complaint. Count I alleges Jackson breached its contractual duty to provide Hinkle with peaceful and quiet enjoyment of the premises. Count II alleges negligence on the part of all three defendants. The defendants have moved to dismiss all counts.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and accept as true all well-pleaded facts and allegations. See Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. See Lucien v. Preiner, 967 F.2d 1116, 1168 (7th Cir. 1992). In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must limit itself to the allegations contained in the pleadings themselves. It is with these principles in mind that we address the motion before us.

## DISCUSSION

All three defendants filed individual motions to dismiss. However, Jackson and Intell's are essentially identical. Therefore, we address Jackson and Intell's arguments together and any additional individual arguments by Walsh separately.

**I. Negligence**

Illinois law plainly recognizes that a landlord owes its tenants a common law duty to avoid negligent acts or omissions that cause foreseeable harm to tenants. See, e.g., Cole v. Housing Authority of LaSalle County, 385 N.E.2d 382, 383 (Ill. App. Ct. 1979). A landlord's common law duty to its tenants can include a duty to use reasonable care in selecting an independent contractor to work on the property. Huber v. Seaton, 519 N.E.2d 73, 76 (Ill. App. Ct. 1988).

Hinkle alleges in its complaint that Jackson had a duty to ensure the construction work was not performed negligently. They claim that Jackson breached that duty as the landlord of the building by failing to prevent the flooding or correct it after Hinkle brought it to their attention.

The defendants raise numerous challenges to the sufficiency of Hinkle's complaint. First, Jackson states that it has no duty to Hinkle because it was not a party to the original lease, and even if it had been a party to the lease, there is no common law duty of care owed to Hinkle. Hinkle alleges that Jackson became the owner and landlord of the leased office space by succeeding CEBA in the lease. Therefore, because Jackson is Hinkle's landlord, Jackson owes a duty of care at common law to Hinkle. This duty is separate from any contractual duties that it may have towards Hinkle under the lease. Although the terms of the contract may impose additional duties on Jackson, this does not eliminate or replace common law duties Jackson has as a landlord.

Second, Intell argues that because it was not a party to the lease, it has no common law duty of care towards Hinkle. Hinkle alleges in its complaint that Intell was the management company responsible for the building. Taking that allegation in the light most favorable to Hinkle, we conclude that Intell is an agent of Jackson. The actions of an agent are the actions of the principal. As discussed above, Jackson owed a duty of care to Hinkle outside of the contract as its landlord, and thus Intell owed the same duty.

Finally, Walsh also disputes that it owed a duty to Hinkle. Hinkle alleges that Walsh was the general contractor for the roof repairs, that Walsh had a duty to ensure the work was being done properly. Illinois law recognizes that a contractor hired by a landlord to work on a building owes a common law duty of care to the building's

-4-

tenants to avoid foreseeable harm to the tenants. Cole v. Housing Authority of LaSalle County, 385 N.E.2d 383, 385 (Ill. App. Ct. 1979). Hinkle has clearly stated a claim against Walsh and the grounds upon which it rests.

Walsh also argues that Hinkle has predicated its claim of negligence on Walsh's duty to ensure Hinkle' quiet and peaceful enjoyment of the premises, a duty born solely out of contract. Walsh has misread the complaint. Nowhere does Hinkle allege that Walsh was a party to the lease, that Walsh had any duties under the lease, or that Walsh even had a common law duty to ensure Hinkle's peaceful and quiet enjoyment of the premises. Rather, Hinkle's negligence claim is based solely on Walsh's duty of care at common law not to damage the property of tenants like Hinkle, and thus the complaint states a claim sufficient to withstand a 12(b)(6) challenge.

## II. Moorman Doctrine

All three defendants argue that Hinkle's losses should be barred by the Moorman doctrine. They argue that the losses result from Hinkle's disappointed commercial expectations, are purely economic and do not fit any exception that would preclude application of the Moorman doctrine.

The Moorman doctrine bars a plaintiff in a negligence action from recovering losses that do not involve personal injury or property damage. See Moorman Mfg. Co. v. Nat'l Tank Co., 435 N.E.2d 443 (Ill. 1982). In other words, tort law is not intended to compensate parties for monetary losses suffered as a result of duties that are owed to them simply as a result of a contract. Nepomoceno v. Knights of Columbus, 1999

U.S. Dist. LEXIS 1366, *31 (N.D. Ill. Feb. 8, 1999). Pure economic losses are defined as damages for inadequate value, costs of repair and replacement of defective product, or loss of profits. Moorman, 453 N.E.2d at 449.

The Moorman doctrine is based upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property. Relief for economic losses occasioned by diminished commercial expectations not coupled with injury to person or property, on the other hand, are found in contract law and the Uniform Commercial Code. In re Chicago Flood Litigation, 680 N.E.2d 265, 275 (Ill. 1997), quoting In re Illinois Bell Switching Station Litigation, 641 N.E.2d 440, 449 (Ill. 1994). However, the Moorman doctrine does not stand simply for the proposition that economic losses are not recoverable in tort. Instead, it limits the claims of parties who allege breach of a contract to contractual remedies, rather that tort remedies. Put another way, if a plaintiff claims that a defendant breached an obligation other than a contractual obligation, the Moorman doctrine does not apply. Trade Solutions Incorporated v. Eurovictory Sports, Inc., 1998 U.S. Dist. LEXIS 2725, *13 (N.D. Ill. Mar. 6, 1998).

Hinkle entered into a contract with Jackson. Jackson has a contractual duty to provide quiet and peaceful enjoyment of the premises to Hinkle. However, Hinkle alleges duties that do not arise out of the contract. The breach of these common-law duties is not a disappointed commercial expectation of Hinkle's, nor is it a "gradual deterioration or internal breakdown of the defective property." See Redarowicz v.

Ohlendorf, 441 N.E.2d 324, 327 (Ill. 1992). "Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." Congregation of the Passion v. Touche Ross & Co., 636 N.E.2d 503, 514 (Ill. 1994). Hinkle's claim for negligence is not an attempt to veil a contract claim.

Furthermore, even if Hinkle's claim were a disappointed commercial expectation, the Moorman doctrine would not apply because Hinkle alleges it did suffer property damage. Additionally, the damage was not caused by a qualitative defect (i.e., the slow deterioration of the roof), but rather from the sudden event of holes being punched in the roof, allowing water to leak into the building.

Based on the foregoing, we conclude that Hinkle has sufficiently plead a cognizable claim for negligence against all three defendants.

### III. Punitive Damages

Under Illinois law, punitive damages may be awarded upon a showing of gross negligence and a wanton disregard for the rights of others. Hollowell v. Wilder Corp. of Delaware, 743 N.E.2d 707, 711 (Ill. App. Ct. 2001). All three defendants argue that Hinkle has not properly pleaded the kind of behavior that would support a claim for punitive damages. The sole basis for Hinkle's claim seems to be the length of time in which their complaints about the flooding were ignored. Although we sympathize with Hinkle that four months seems a long time to wait, we do not think that the facts Hinkle has alleged show the kind of extreme conduct that would warrant punitive damages.

-7-

As such, the defendants' motions are **Provisions** granted as to the prayer for punitive damages.

**IV. Contract**

*a. Paragraph 9(a)*

Jackson argues that paragraph 9(a) of the Lease means that Hinkle has agreed to waive any right for recovery against the landlord for loss or damage. That paragraph reads: "To the extent permitted by law, Landlord shall not be liable, and Tenant waives all claims it may have against Landlord, its agents . . . for loss or damage to . . . property sustained by Tenant . . . resulting from any act or neglect of . . . Landlord." Hinkle points to the Landlord and Tenant Act of Illinois, arguing that this provision is void as against public policy. Section 1 of the Act prevents landlords from exempting themselves for liability resulting from the negligence of the lessor or other related parties, including the lessor's agents. 765 Ill. Comp. Stat. 705/1. Whether a particular lease provision is void depends not on the cause of action in which the lease provision is invoked but rather whether the language of the lease provision runs afoul of the statutory prohibition. See Economy Mechanical Industries v. Higgins Company, 689 N.E.2d 199, 202 (Ill. App. Ct. 1997).

Although the Act expressly prohibits only lease exculpatory provisions, it has been construed as also prohibiting certain lease indemnification provisions. McMinn v. Cavanaugh, 532 N.E.2d 343, 357 (Ill. 1988). An exculpatory clause deprives a tenant of its right to recover damages for harm sustained by the tenant as a result of the

landlord's negligence. Economy, 689 N.E.2d at 202. An indemnification or "hold harmless" clause concerns the risk of harm to third parties caused by the landlord's negligence and seeks to shift the financial burden, for ultimate payment of damages, from the landlord to the tenant. Id. Both Jackson and Intell concede this point in their motions.

It is clear that paragraph 9(a) of the Lease is an attempt by Jackson to exculpate itself from liability toward Hinkle for Jackson's own negligence. It is equally clear that paragraph 9(a) of the Lease is also an attempt by Jackson to indemnify itself from liability toward third parties from its own negligence. Therefore, paragraph 9(a) of the Lease between the parties is void as against public policy according the Illinois Landlord and Tenant Act. 765 Ill. Comp. Stat. 705/1. Because this paragraph is void, it does not bar Hinkle's claims.

*b. Paragraphs 9(b) and 9(c)*

Jackson further argues that paragraphs 9(b) and 9(c) of the lease bar Hinkle's claims because those paragraphs require Hinkle to obtain liability insurance for both itself and Jackson, and that such a requirement is deemed to be the sole remedy for damages under the contract in Illinois.

As stated above, any attempt by a landlord in a lease to exculpate itself from liability for its negligent acts is as against public policy. Paragraph 9(b) appears to require that Hinkle protect itself from fire or other catastrophic events by acquiring insurance and to hold the landlord harmless if such events occur. This provision is

susceptible to two interpretations. It either means that if Hinkle suffers damage from some nonnegligent act, like a tornado, Hinkle will be protected by an insurance policy and not seek a remedy from Jackson. If this is the case, then the negligent acts of Jackson are not covered by this paragraph. Otherwise, this provision means that if some negligent act causes Hinkle's damage, Jackson will be exculpated from liability, which would make the provision void against public policy under the Illinois Landlord and Tenant Act. Under either interpretation, this paragraph cannot bar Hinkle's claims of breach of contract or negligence.

Defendants also argue that paragraph 9(c), which essentially requires Hinkle to obtain general liability insurance, provides Hinkle with a sole remedy. Defendants' reliance on Clark v. Ruan and other supporting cases is misplaced. Clark v. Ruan, 1994 U.S. Dist. LEXIS 3330 (N.D. Ill. Mar. 18, 1994). In Clark, the parties agreed in their contract that the lessee of automobiles would provide insurance naming both the lessor and lessee as co-insureds. Id. at *2. A third party suffered injuries while driving the leased vehicle and sued the lessee for damages. Id. The lessee then filed a third party complaint against the lessor seeking contribution. Id. The court held that the insurance provision naming both the lessor and lessee as co-insureds barred the lessee from suing the lessor seeking contribution for injuries suffered by a third party because the parties agreed to look to the insurance for protection. Id. at *3. The court also noted that whatever amount not covered by the insurance would be recoverable from the lessor. Id. at *3.

The facts in <u>Clark</u> are not synonymous with the instant case. Hinkle is not suing Jackson for contribution for the injuries suffered by a third party. Hinkle and Jackson are not codefendants. Rather, Hinkle is suing for injuries it suffered as a direct result of Jackson's alleged negligence. The agreement in the lease between the parties does not provide the sole remedy for the parties as to claims against each other.

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss the prayer for punitive damages are granted. The remainder of the motions are denied.

_____
Charles P. Kocoras
United States District Judge

Dated: __October 17, 2001__